UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| NORMAN WANG, | : | |
| Plaintiff, | : | |
| -against- | : | No. 2:20-cv-01952 |
| UNIVERSITY OF PITTSBURGH, UNIVERSITY OF PITTSBURGH MEDICAL CENTER, UNIVERSITY OF PITTSBURGH PHYSICIANS, SAMIR SABA, MARK GLADWIN, and KATHRYN BERLACHER, | : | |
| Defendants. | : | |

---

## SECOND AMENDED COMPLAINT

This complaint alleges a violation of the First and Fourteenth Amendments, and other federal law. With respect to the claims that the Court's order of December 21, 2021 (Dkt. No. 72) dismissed without prejudice, Plaintiff hereby repleads only the First Amendment claim against defendant University of Pittsburgh. With respect to all other such claims (those dismissed without prejudice) against any parties named in his previous (first amended) complaint (Dkt. No. 43), Plaintiff chooses to stand on the allegations of his previous (first amended) complaint.

## JURISDICTION AND VENUE

1. This is an action arising under the Constitution and laws of the United States. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

2. Plaintiff seeks relief under 42 U.S.C. §§ 1981, 1983, and 1988.

3. Jurisdiction over the state law claim is invoked pursuant to the doctrine of supplemental jurisdiction because the state law claim forms part of the same case or controversy as the federal claims.

4. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

PARTIES

5. Plaintiff Norman Wang is a cardiologist, a member of the faculty of the University of Pittsburgh School of Medicine ("UPSOM"), and a doctor employed by University of Pittsburgh Physicians ("UPP"). He resides and works in this district. Prior to the events described herein, he directed the fellowship program in clinical cardiac electrophysiology jointly operated by UPSOM and the University of Pittsburgh Medical Center ("UPMC"). Wang is an American citizen who is ethnically Chinese by birth.

6. Defendant University of Pittsburgh ("Pitt") is an educational institution in, and supported by, the State of Pennsylvania. It is part of the Commonwealth System of Higher Education in Pennsylvania and is a state-related institution. The individual employees and agents acting on its behalf act under color of state authority. UPSOM is a part of Pitt.

7. Defendant UPMC is a Pennsylvania corporation doing business in Pennsylvania. It operates hospitals and medical centers in Pennsylvania and is affiliated with Pitt.

8. UPSOM and UPMC jointly operate residency programs for medical school graduates and fellowship programs for physicians who have completed their residencies. The fellowship program for which Plaintiff was the director was one such fellowship program. The fellowship and residency programs are part of a Graduate Medical Education ("GME") program.

9. Defendant UPP is a group medical practice that employs faculty physicians and is affiliated with, and wholly-owned by, UPMC. It supplies physician services to UPMC facilities, and at least some of its employees also serve as faculty at UPSOM.

10. Defendant Samir Saba is the Chief of the Cardiology Division in the Department of Medicine at UPSOM. The actions taken by Defendant Saba described below were taken in his role as Chief of the Cardiology Division at UPSOM and were thus taken under color of state authority.

11. Defendant Mark Gladwin is the Chairman of the Department of Medicine at UPSOM. In that role, Gladwin oversees the internal medicine GME program that Pitt and UPMC jointly operate, including the fellowship program of which Plaintiff was the director. The actions taken by Defendant Gladwin described below were taken in that role, on behalf of UPSOM, and under color of state authority.

12. Defendant Kathryn Berlacher is a Professor in the Cardiology Division in the Department of Medicine at UPSOM. As part of her duties there, she is the director of a cardiovascular fellowship training program jointly operated by UPSOM and UPMC. The actions taken by her described below were taken under color of state authority.

## FACTUAL BACKGROUND

13. Plaintiff's employment contract with UPP requires him to provide both academic services to UPSOM and physician services to UPMC. In the contract, UPP delegates supervision of all of Plaintiff's activities required by the contract – both his academic activities and the physician services – to a department head at UPSOM. Thus, a state actor supervises and controls all of Plaintiff's employment activities. During the events described below, that state actor was Saba, the Chief of the Cardiology Division at UPSOM.

14. Similarly, UPMC delegates much of the supervision of the physicians who work in its facilities to UPP and, accordingly, with respect to Plaintiff, to the same state actor identified in Plaintiff's employment contract with UPP.

15. In 2019 and 2020, Plaintiff wrote an article on diversity and the cardiology workforce, tracing the history of the use of race and ethnicity as factors in determining admission into medical schools, residency programs, and fellowships. The article asserted that the medical profession had not been successful in reaching its goals of increasing the percentages of underrepresented races and ethnicities in the medical profession generally, and cardiology in particular. It also noted that programs to achieve those goals applied different standards to applications by members of underrepresented races and ethnicities and raised questions about the legality, effectiveness, and wisdom of doing so.

16. Plaintiff submitted his article to the Journal of the American Heart Association (JAHA). After it went through JAHA's normal review and vetting process, including a review

of Plaintiff's cites and sources for accuracy, JAHA's publishers offered to publish Plaintiff's article in JAHA in exchange for Plaintiff paying $1600. Plaintiff agreed to those terms and paid $1600 to the publishers to publish the article in JAHA. The article was placed online in March 2020.

17. Four months later, in late July 2020, various individuals on social media objected to the conclusions that Plaintiff drew in his article. Defendants Gladwin, Saba, and Berlacher also objected to Plaintiff's conclusions and resolved and agreed to impose adverse employment consequences upon Plaintiff because of the views he expressed in his article. The actions described below were taken pursuant to that agreement.

18. On July 31, 2020, defendants Saba and Berlacher met with Plaintiff. During the course of the conversation, Plaintiff told Saba and Berlacher that the selection processes for the GME programs were violating federal law because of the racial and ethnic preferences they employed.

19. Shortly after Plaintiff told Saba and Berlacher of the illegal nature of the GME programs, Saba, pursuant to his agreement with, and with the approval of, Gladwin and Berlacher, removed Plaintiff from his role as the director of the fellowship program in clinical cardiac electrophysiology.

20. In addition, Saba, pursuant to the agreement with Gladwin and Berlacher, forbid Plaintiff from having contact with individuals in any GME program (fellows and residents) or medical students at UPSOM.

21. Saba imposed adverse consequences on Plaintiff because of the views Plaintiff expressed in his article. Alternatively, Saba imposed adverse consequences on Plaintiff because of Plaintiff's contention that the selection processes for the GME programs were violating federal law because of the racial and ethnic preferences they employed.

22. Plaintiff's contact with medical students was part of his job as a member of the faculty of UPSOM.

23. Saba had the authority (1) to remove Plaintiff as the director of the fellowship program and (2) to restrict Plaintiff's ability to interact with residents and members of the fellowship programs. Moreover, he had the authority to restrict Plaintiff's ability to interact with medical students as Chief of the Cardiology Division at UPSOM.

24. Gladwin and/or Saba had final decision-making authority to take the foregoing adverse actions; or they otherwise received authorization for these adverse actions by a decision-maker who possessed final decision-making authority to establish policy for UPSOM with respect to the subject matter.

25. Gladwin and Saba have the authority to reinstate Plaintiff to his position as director of the fellowship program in clinical cardiac electrophysiology and to rescind the restriction on Plaintiff's contacts.

26. The decisions (1) to remove the director of the fellowship program, and (2) to order a faculty member to restrict his interactions with students represent the official policy of UPSOM.

27. Shortly after Plaintiff's meeting with Saba and Berlacher, Gladwin wrote a "Dear Colleague" email to the UPSOM community. It was sent in his role as the Chair of the Department of Medicine at UPSOM and described the action that was taken pursuant to his agreement with Saba and Berlacher. Among other things, it stated that many of those in the UPSOM community might have heard about a "perspective" published by "a faculty member" at UPSOM that "was antithetical to our values and deeply hurtful to many of our URM faculty." It further stated: "*We* have taken immediate action and removed the person from their [sic] leadership position . . ." (emphasis added).

28. Gladwin's letter reflects the decision he made as the Chair of the Department of Medicine at UPSOM, and ascribes that decision to UPSOM's values. Gladwin had authority on behalf of UPSOM on issues of policy, including whether a faculty member could have contact with medical students at UPSOM.

29. Although Gladwin did not mention Plaintiff by name, he was referring to Plaintiff and the article that was published in JAHA. That he was referring to Plaintiff was well understood in the UPSOM community that received Gladwin's email.

30. Defendant Gladwin used his final decision-making authority as the Chair of the Department of Medicine at UPSOM to effect the adverse actions undertaken against Plaintiff; as a result, the adverse actions taken against Plaintiff establish the official policy of UPSOM.

31. The adverse employment actions taken by defendants have had a negative financial impact on Plaintiff. Plaintiff was paid sums in addition to his base salary to be the

director of the fellowship in clinical cardiac eletrophysiology. Because he was removed from that position, he is no longer paid those additional sums.

32. Plaintiff was also paid sums in addition to his base salary for consulting with groups needing his expertise in clinical cardiac eletrophysiology. Because the groups with which he consults frequently include medical students, residents, or fellows, and because he was prohibited from contact with those individuals, Plaintiff was no longer able to consult as frequently as he did previously and lost income as a consequence.

33. At around the same time as these adverse employment actions were taken against Plaintiff, a number of employees of UPP and UPMC acting on behalf of UPP and UPMC, began a campaign of attack against his article. Among other things, these agents of UPP and UPMC falsely asserted that the article contained many miscitations and misquotations. They made these statements to the publishers of JAHA and called upon those publishers to retract the article.

34. Despite the fact that the publishers of JAHA had vetted the article pursuant to the usual procedures for review of all articles in JAHA, and had checked the accuracy of the citations and sources, the publishers retracted the article, and did not return the $1600 fee that Plaintiff paid to have it published.

35. Plaintiff's removal from the position of director of the fellowship program in clinical cardiac electrophysiology, and severe limitations on his ability to consult, remains in effect. In the absence of injunctive relief from this Court, these adverse actions against him will continue.

FIRST CLAIM FOR RELIEF (for violations of the First Amendment and Section 1983)

36. Plaintiff hereby incorporates all of the previous allegations of this complaint.

37. Plaintiff's article on the history of race-conscious selection procedures in the field of medicine and cardiology was on a topic of public concern. His speech was not made on behalf of UPSOM, UPP, or UPMC.

38. Defendants Pitt, Gladwin, Saba, and Berlacher acted under color of state authority in removing Plaintiff from his position as the director of the fellowship program in clinical cardiac eletrophysiology, and in precluding him from having contact with medical students, residents, and fellows.

39. These defendants imposed adverse consequences against Plaintiff because of the views expressed in his article. They had and have no adequate justification for imposing adverse consequences on Plaintiff for his protected speech.

40. These defendants violated the First Amendment (as incorporated against the states through the Fourteenth Amendment's Due Process Clause) by imposing adverse consequences on Plaintiff for his protected speech. Accordingly, they also violated 42 U.S.C. § 1983 in doing so, and Plaintiff is entitled to recover under that statute.

41. Plaintiff has suffered damages and will continue to suffer damages as a consequence of the adverse actions taken by defendants. Accordingly, he is entitled to both damages for past harm and injunctive and/or declaratory relief to prevent ongoing and future

harm.

SECOND CLAIM FOR RELIEF (for violations of Section 1981)

42. Plaintiff incorporates all prior allegations.

43. UPMC retains residents and fellows by contract.

44. Because UPMC delegated supervision of Plaintiff's employment to Saba as the Chief of the Cardiology Division at UPSOM, Saba had the ability to impose adverse consequences on Plaintiff's employment at UPMC. UPMC discriminated against Plaintiff and imposed adverse consequences against him in part because he apprised Saba and Berlacher on July 31, 2020 that the selection process for residents and fellows discriminated on the basis of race and ethnicity and violated federal law.

45. Plaintiff had a reasonable belief that the selection process for residents and fellows discriminated on the basis of race and ethnicity and violated federal law.

46. UPMC's discrimination against Plaintiff violated 42 U.S.C. § 1981.

47. Plaintiff has suffered damages and will continue to suffer damages as a consequence of the adverse actions taken by defendants. Accordingly, he is entitled to both damages for past harm and injunctive and/or declaratory relief to prevent ongoing and future harm.

THIRD CLAIM FOR RELIEF (for tortious interference)

48. Plaintiff incorporates all prior allegations.

49. The publishers of JAHA entered into a contract with Plaintiff for the publication of his article. Plaintiff paid $1600, among other consideration, in this contract in exchange for JAHA publishing the article online.

50. UPP and UPMC, and those who acted on their behalf, knew that Plaintiff had an agreement with the publishers of JAHA to publish Plaintiff's article in JAHA. Each of them tortiously interfered with that economic relationship without justification, and Plaintiff's business relationship with the publishers by inducing the publishers to retract the article.

51. Plaintiff has suffered damages and will continue to suffer damages as a consequence of these defendants' tortious interference with his business relationship with JAHA's publishers and their inducement of the publishers' retraction.

Demand For Judgment

WHEREFORE plaintiff demands judgment:

A. A declaratory judgment that defendants are violating 42 U.S.C. § 1983 by their removal of plaintiff from his position as the director of the fellowship program in clinical cardiac electrophysiology and by restricting his contacts;

B. Injunctive relief requiring Plaintiff's reinstatement as director of the fellowship

program in clinical cardiac electrophysiology and precluding defendants from enforcing their prohibition restricting Plaintiff's contacts;

C. Damages in an amount to be determined;

D. Attorney's fees and costs pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988, or any other applicable authority; and

E. Any other relief that is appropriate.

JURY DEMAND

Plaintiff hereby demands a jury for all claims triable by right by a jury.

Dated: January 11, 2022

*<u>/s/ Michael E. Rosman</u>*
Michael E. Rosman (admitted pro hac vice)
rosman@cir-usa.org
Michelle A. Scott (admitted pro hac vice)
scott@cir-usa.org
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave, NW, Ste. 625
Washington, D.C. 20036
(202) 833-8400

Shawn Rodgers (PA 307598)
srodgers@goldsteinlp.com
GOLDSTEIN LAW PARTNERS, LLC
11 Church Road
Hatfield, PA 91440
(731) 426-8130