**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NORMAN WANG, ) | |
| ) | |
|  Plaintiff, ) | 2:20-cv-1952 |
| ) | |
|  vs. ) | District Judge Marilyn J. Horan |
| ) | |
| UNIVERSITY OF PITTSBURGH, ) | |
| UNIVERSITY OF PITTSBURGH ) | |
| MEDICAL CENTER, UNIVERSITY OF ) | |
| PITTSBURGH PHYSICIANS, SAMIR ) | |
| SABA, MARK GLADWIN, and ) | |
| KATHRYN BERLACHER, ) | |
| ) | |
| ) | |
|  Defendants. ) | |

**OPINION**

On February 28, 2023, pursuant to Federal Rule of Civil Procedure 53, this Court referred this case to Special Master, Carole Katz to resolve a discovery dispute involving additional discovery requests from Plaintiff, Norman Wang.  (ECF No. 127).  Dr. Wang seeks additional discovery of all unredacted documents in Defendants, University of Pittsburgh Medical Center (UPMC), Samir Saba, Mark Gladwin, and Kathryn Berlacher's, possession that describe the relationship between Defendants UPMC and the University of Pittsburgh.[1]  (ECF No. 132, at 3). Defendants have already supplied multiple documents, detailing the relationship between UPMC and the University of Pittsburgh.  Some portions of the documents have been redacted by UPMC due to confidentiality concerns and lack of relevance to the case at bar.  (ECF No. 132, at 3).  Dr. Wang seeks full, unredacted versions of such agreements between UPMC and the University of

---

[1] The University of Pittsburgh was previously named as a Defendant in the case, was dismissed, and has since been re-named as a Defendant in the case.  (ECF No. 151).  Although the University is again a party to the case, it is not a named Defendant in the context of the present discovery dispute.

Pittsburgh.  (ECF No. 132, at 3).  Dr. Wang also seeks electronic discovery of three additional

data custodians at UPMC and the University of Pittsburgh.  (ECF No. 132, at 6-7).

On May 22, 2023, Ms. Katz issued a Report and Recommendation, recommending that

Dr. Wang's additional discovery requests be denied.  (ECF No. 132).  On June 20, 2023, Dr.

Wang filed his Objections to Ms. Katz's Report and Recommendation.  (ECF No. 158).

Defendants UPMC and Drs. Saba, Gladwin, and Berlacher filed a response to Dr. Wang's

written Objections on July 5, 2023.  (ECF  No. 163).

For the reasons that follow, and after de novo review, the Court will adopt and modify in

part the Report and Recommendation.  Dr. Wang's request to conduct additional discovery will

be denied in part and granted in part.

## I.      Discussion

Pursuant to Federal Rule of Civil Procedure 53(f)(3), a district court must decide, de

novo, all objections to findings of fact made or recommended by a special master.  The same de

novo standard of review applies to conclusions of law made or recommended by a special

master. Fed. R. Civ. Pro. 53(f)(4).  Unless the order of appointment of a special master

establishes a different standard of review, the court may set aside a special master's ruling on a

procedural matter only for an abuse of discretion.  Fed. R. Civ. Pro. 53(f)(5).  The court's review

is to be based on the record that was before the special master.  Fed. R. Civ. Pro. 53(b)(2)(C) &

(D).

Dr. Wang has articulated eleven Objections to Ms. Katz's Report and Recommendation.

The Court will address each Objection in turn.  Objections 1-4 relate to the unredacted affiliation

agreements between UPMC and the University of Pittsburgh, and Objections 5-11 relate to the

electronic discovery of three additional data custodians at UPMC and the University of Pittsburgh.

### A. Unredacted Relationship Agreements

Dr. Wang articulates four Objections to Ms. Katz's denial of his request for the unredacted Relationship Agreements between UPMC and the University of Pittsburgh.

Dr. Wang first objects that Ms. Katz's Report and Recommendation asserts that a document called "Relationship Agreement" was produced by UPMC.  (ECF No. 158, at 2).  Dr. Wang asserts that the more accurate name for said agreement is "Third Amendment of Relationship Agreement."  (ECF No. 158, at 2).  Defendants argue that the use of the incorrect name for document has no bearing on whether or not said affiliation agreement should be produced in its entirety.  (ECF No. 163, at 10).  The Court agrees with Dr. Wang that the more precise term for the agreement is "Third Amendment of Relationship Agreement;" however, Ms. Katz's less precise response within her Report and Recommendation has no bearing upon whether or not Defendants should be required to produce an unredacted version of said agreement.  Therefore, for clarity only, the reference to "Relationship Agreement" in the Report and Recommendation shall be amended to reflect the properly titled "Third Relationship Agreement."

As to the substance of Dr. Wang's Objections to Ms. Katz's Report and Recommendation, Dr. Wang's Second Objection relates to Ms. Katz's finding that "[t]he general relationship between Pitt and UPMC has no bearing on whether the Individual Defendants were acting on behalf of not just UPMC but also Pitt when they made the Challenged Decisions." (ECF No. 158, at 2) (quoting ECF No. 132, at 5).  Within his Second Objection, Dr. Wang argues that the unredacted affiliation agreements between UPMC and the University of

Pittsburgh directly relate to whether the Individual Defendants made their decision to terminate

Dr. Wang as state actors.  (ECF No. 158, at 3).  Dr. Wang's Third Objection argues that Ms.

Katz did not apply the proper holding from *Borrell v. Bloomsburg University*, 870 F.3d 154,

161-62 (3d Cir. 2017).  (ECF No. 158, at 4).  Finally, Dr. Wang's Fourth Objection asserts that

the affiliation agreements are relevant, and that Ms. Katz should have balanced the information

to be obtained from the affiliation agreements against Defendants' confidentiality arguments.

(ECF No. 158, at 5).

Defendants argue that the unredacted portions of the affiliation agreements between

UPMC and the University of Pittsburgh have no relevancy to Dr. Wang's § 1983 claims against

the Individual Defendants.  (ECF No. 163, at 10-11).  Defendants also argue that *Borrell* is

distinguishable from the present case, because, in *Borrell*, the collaboration agreement between

the public university and the relevant private medical center directly related to the specific

program from which the plaintiff was removed.  (ECF No. 163, at 12 n.11).  Defendants also

assert that a confidentiality assessment of the unredacted affiliation agreements were not

necessary as Ms. Katz found the unredacted affiliation agreements to not be proportional to the

needs of the case.  (ECF No. 163, at 14-15).

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case."  Additionally, "[a]lthough the scope of relevance in

discovery is far broader than allowed for evidentiary purposes, it is not without its limits . . .

Courts will not permit discovery where a request is made in bad faith, unduly burdensome,

irrelevant to the general subject matter of the action, or relates to confidential or privileged

information." *Robinson v. Folino*, 2016 WL 4678340, at *2 (W.D. Pa. Sept. 7, 2016) (internal quotations omitted).

Turning to Dr. Wang's argument about the *Borrell* holding, in *Borrell*, the Third Circuit found that the director of a joint public-private nurse anesthetist program did not engage in state action when he terminated the plaintiff for violating the medical center's drug and alcohol policy. *Borrell*, 870 F.3d at 160-62. In reaching its ultimate conclusion of no state action, the court considered the written collaboration agreement pursuant to which the nurse anesthetist program operated in conjunction with the public entity. *Id.* The facts of *Borrell* are distinguishable from the present case. The collaboration agreement in *Borrell* concerned the specific program from which the plaintiff was discharged. Presently, the Special Master and the Defendants are correct that, in this case, no program-specific agreement between UPMC and University of Pittsburgh School of Medicine that governs the fellowship program at issue or the University's Graduate Medical Education program, exists. The unredacted versions of the general affiliation agreements between UPMC and the University of Pittsburgh do not compare to the program-specific collaboration agreement that was at issue in *Borrell*.

In this case, the only remaining state action issue is whether the Individual Defendants acted under the color of state law when they took the alleged adverse employment actions against Dr. Wang. This Court dismissed Dr. Wang's § 1983 claim against UPMC. As such, the affiliation agreements between UPMC and University of Pittsburgh have no impact on the issue of whether the Individual Defendants acted as state actors when they took the alleged adverse employment actions against Dr. Wang. UPMC has asserted that they have already provided the relevant portions of the affiliation agreements to Dr. Wang. Here, the Court finds that Dr. Wang's request for the entirety of the unredacted affiliation agreements between UPMC and the

University of Pittsburgh is not relevant and proportional to the needs of the case.  Dr. Wang has

not made a proper showing that such unredacted affiliation agreements are necessary for his

§ 1983 claims against the Individual Defendants.

As the affiliation agreements between UPMC and the University of Pittsburgh are not

relevant to Dr. Wang's § 1983 claims against the Individual Defendants, Ms. Katz did not err in

not performing a confidentiality analysis concerning the redacted affiliation agreements.  Thus,

for all the reasons discussed above, Dr. Wang's Second, Third, and Fourth Objections to Ms.

Katz's Report and Recommendation will be overruled.  Dr. Wang will not be permitted to seek

discovery of any additional unredacted affiliation agreements between UPMC and the University

of Pittsburgh.

### B.  Three Additional Data Custodians

Dr. Wang articulates seven Objections to Ms. Katz's denial of his request to conduct e-

Discovery of the three additional data custodians, Drs. Bump, Shapiro, and Jonassaint.

Dr. Wang's Fifth Objection argues that, because the Defendants did not object to the

relevance or proportionality of his Document 17 and 18 Requests, any arguments concerning

relevance or proportionality were waived.  (ECF No. 158, at 6).  Dr. Wang's Sixth Objection

argues that Ms. Katz's Report and Recommendation characterizes the communications with the

three additional data custodians as "isolated email or text messages."  (ECF No. 158, at 6)

(quoting ECF No. 132, at 7).  Dr. Wang's Seventh Objection argues that Ms. Katz was incorrect

in asserting that Dr. Bump's "awareness after-the-fact of a decision is not probative of any

involvement in the decision-making process, or the reasons and motivations for the decision."

(ECF No. 158, at 7) (quoting ECF No. 132, at 8).  Dr. Wang Eighth Objection argues that Ms.

Katz was incorrect in asserting that, with regard to Dr. Wang's Exhibit M, that "[t]his email

chain reflects Dr. Shapiro updated, and discussed Article-related concerns with, others in high-level positions.  This does not mean he was involved in the decision-making process."  (ECF No. 158, at 8) (quoting ECF No. 132, at 8).  Dr. Wang's Ninth Objection argues that Ms. Katz's Report and Recommendation wrongly states that "UPMC represents that Dr. Shapiro has no emails or text messages regarding Dr. Wang's Article or the Challenged Decisions, except for those with the Individual Defendant decision-makers, which already have been produced."  (ECF No. 158, at 8) (quoting ECF No. 132, at 8).  Dr. Wang's Tenth Objection argues that Ms. Katz was incorrect in recommending that Defendants should not be compelled to provide Dr. Jonassaint's email and text message communications.  (ECF No. 158, at 8-9).  Finally, Dr. Wang's Eleventh Objection argues that there are other considerations besides the measure of damages such as "employment practices, free speech, and other matters" to this case that justify the additional e-Discovery searches of Drs. Bump, Shapiro, and Jonassaint.  (ECF No. 158, at 9) (quoting Notes of the Advisory Committee on the 2015 Amendments to Rule 26).

As regards Dr. Wang's waiver argument, Defendants respond that objections for relevance and proportionality were unnecessary to their responses to Dr. Wang's Document Requests Numbers 17 and 18, as the scope of those requests were limited and that Defendants complied with Dr. Wang's Document 17 and 18 Requests.  (ECF No. 163, at 16).  Dr. Wang's Document Request Number 17 requested "[a]ny documents concerning the decision to remove plaintiff has [sic] the head of the fellowship program in clinical cardiac electrophysiology." (ECF No. 158-5, at 20; 163, at 16).  Dr. Wang's Document Request Number 18 requested "[a]ny documents concerning the decision to preclude plaintiff from having contact with fellows in the fellowship programs, residents, or students at UPSOM."  (ECF No. 158-5, at 21; 163, at 16). Defendants objected to both document requests "to the extent it requests documents that are

protected by the attorney-client privilege and/or work product doctrine." (ECF No. 158-5, at 20-21; 163, at 16).

Objections to requests for production must be raised in the party's initial written response or they are waived. *Monterey Commc'ns, LLC v. Atl. Tele-Network Int'l, Inc.*, 2021 U.S. Dist. LEXIS 256342, at *6-7 (D.V.I. Apr. 22, 2021). When Dr. Wang first served his Document Requests, his inquiry was general, and the Defendants produced the full scope of what they contemplated was requested with the exception of documents protected by attorney-client privilege and/or work product doctrine. Based upon what was initially produced by defense, Dr. Wang now seeks discovery of three additional data custodians. Although the defense did not raise objections for confidentiality and proportionality to the first set of document requests, this does not prevent the defense from raising such objections to the additional discovery requested by Dr. Wang. Defense did not waive such objections for confidentiality and proportionality by not raising such objections in response to Dr. Wang's initial set of document requests.

As regards proportionality, Defendants contend that Ms. Katz was correct in determining that, to order e-Discovery of the three additional data custodians, would not be proportional to the needs of the case. (ECF No. 163, at 17-18). The Defendants assert that it will cost $21,000 to conduct the additional e-Discovery of Drs. Bump, Shapiro, and Jonassaint's email and text message communications and that such cost is not proportional to the relevance of any such additional searches. (ECF No. 163, at 17-20). Federal Rule of Civil Procedure 26(b)(1) requires that in order to be discoverable in the first instance, documents and data must be both relevant and the effort required to collect, search, and produce them must be proportional to the needs in the case. "The purpose of th[e] rule of proportionality is to guard against redundant or

disproportionate discovery." *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2012 WL 1299379, at *6 (D.N.J. Apr. 16, 2012).

As to Dr. Wang's requests for production of Drs. Shapiro and Jonassaint's email and text message communications, the Court agrees with Ms. Katz's conclusion that the totality of disclosed key decision-makers' communications with Drs. Shapiro and Jonassaint support that such were isolated email or text messages. Defendants have already produced the email and text message communications of the key decision makers. These two additional requested persons for e-Discovery, Drs. Shapiro and Jonassaint, have not been disclosed as potential defense witnesses, and there is nothing in the record before this Court to support that expanding discovery to include their email and text message communications would likely yield additional relevant information in the case. As such, the Court concludes that ordering additional e-Discovery of Drs. Shapiro and Jonassaint is not relevant or proportional to the needs of the case. While the Court agrees with Dr. Wang, that there are other important considerations in this case other than Defendants' estimate of Dr. Wang's economic damages, such considerations do not justify the additional requested e-Discovery searches of Drs. Shapiro and Jonassaint's email and text message communications. Defendants will not be ordered to provide additional e-Discovery of Drs. Shapiro and Jonassaint. Dr. Wang's Objection to the Special Master's Report and Recommendation in this regard will be overruled.

As regards Dr. Bump, the Court disagrees with Ms. Katz's conclusion that Dr. Bump's after-the-fact awareness of the alleged adverse employment actions against Dr. Wang does not demonstrate a need for additional discovery of his email and text message communications. The defense has disclosed Dr. Bump as an individual with direct knowledge of the decision to remove Dr. Wang as the director of the clinical cardiac electrophysiology fellowship program.

(ECF No. 158-9, at 2-4).  As such, the additional e-Discovery request for Dr. Bump's relevant email and text message communications may be both relevant and proportional to the needs of the case.  Dr. Wang's Seventh Objection to Ms. Katz's Report and Recommendation concerning Dr. Bump will be sustained.  Dr. Wang will be permitted leave to seek additional e-Discovery of Dr. Bump's email and text message communications.

## II.    Conclusion

Following thorough review of the record and Ms. Katz's Report and Recommendation, Dr. Wang's Objections, and Defendants' Response thereto, this Court will sustain in part and overrule in part Dr. Wang's Objections.  This Court will adopt in part and modify in part the Special Master's Report and Recommendation.  The Special Master's reference to the "Relationship Agreement" will be modified to reflect "Third Amendment of Relationship Agreement."  Dr. Wang will not be permitted to seek discovery on the unredacted affiliation agreements between UPMC and the University of Pittsburgh or the e-Discovery records of Drs. Shapiro and Jonassaint.  Dr. Wang will be permitted to seek additional e-Discovery of Dr. Bump's email and text message communications.  In all other respects, the Special Master's Report and Recommendation will be adopted.  A separate Order to follow.


DATE: _____                          _____
                                                     Marilyn J. Horan
                                                     United States District Judge

10