IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORMAN WANG, | ) |
| Plaintiff, | ) 2:20-cv-1952 |
| vs. | ) District Judge Marilyn J. Horan |
| UNIVERSITY OF PITTSBURGH, UNIVERSITY OF PITTSBURGH MEDICAL CENTER, SAMIR SABA, MARK GLADWIN, and KATHRYN BERLACHER, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff, Dr. Norman Wang, brings a three-count, Fourth Amended Complaint against the University of Pittsburgh, University of Pittsburgh Medical Center (UPMC), University of Pittsburgh Physicians (UPP), Dr. Mark Gladwin, Dr. Samir Saba, and Dr. Kathryn Berlacher, alleging claims for violations of 42 U.S.C. § 1983, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act (PHRA). (ECF No. 152).

Dr. Wang's first Amended Complaint brought claims against the University of Pittsburgh, UPMC, UPP, American Heart Association (AHA), Wiley Periodicals, Dr. Gladwin, Dr. Saba, Dr. Berlacher, Dr. Marc Simon, and John Does 1-10, alleging violations of § 1983, Title VI of the Civil Rights Act of 1964, § 1981, and Pennsylvania state law claims for defamation, breach of contract, tortious interference with contract, and the Pennsylvania Whistleblower Law. (ECF No. 43). The Defendants each filed respective Motions to Dismiss Dr. Wang's Amended Complaint. (ECF Nos. 46, 48, 50, 52 & 54). On December 21, 2021, this Court dismissed Defendants AHA, Wiley Periodicals, Dr. Simon, and John Does 1-10 from the case and dismissed various claims against Defendants University of Pittsburgh, UPMC, UPP,

1

and Drs. Gladwin, Saba, and Berlacher.  (ECF Nos. 72).  The Court granted Dr. Wang leave to amend his § 1983 claim brought against the University of Pittsburgh.  (ECF No. 72).  In their Partial Motion to Dismiss Dr. Wang's first Amended Complaint, Drs. Gladwin, Saba, and Berlacher did not move to dismiss Dr. Wang's § 1983 claims against them.  (ECF No. 52).

Dr. Wang's Second Amended Complaint brought claims against the University of Pittsburgh, UPMC, and Drs. Gladwin, Saba, and Berlacher, alleging claims for violations of § 1983 and § 1981.  (ECF No. 78).  UPMC filed an Answer, and the University of Pittsburgh, and Drs. Gladwin, Saba, and Berlacher filed respective Motions to Dismiss Dr. Wang's Second Amended Complaint.  (ECF Nos. 82, 84, 86).  On April 4, 2022, this Court granted the University of Pittsburgh's Motion to Dismiss, but it denied the individual Defendants' Motion to Dismiss.  (ECF No. 90).  The Court granted Dr. Wang leave to amend his § 1983 claim brought against the University of Pittsburgh.  (ECF No. 90).

Dr. Wang's Third Amended Complaint brought claims against the University of Pittsburgh, UPMC, and Drs. Gladwin, Saba, and Berlacher, alleging claims for violations of § 1983 and § 1981.  (ECF No. 94).  UPMC and Drs. Gladwin, Saba, and Berlacher filed an Answer, (ECF No. 97), while the University of Pittsburgh filed a Motion to Dismiss Dr. Wang's Third Amended Complaint, (ECF No. 95).  On August 31, 2022, this Court granted the University of Pittsburgh's Motion to Dismiss, without leave for Dr. Wang to amend his § 1983 claim against the University of Pittsburgh.  (ECF No. 103).

After this Court granted Dr. Wang leave to file a Fourth Amended Complaint, Dr. Wang filed a Fourth Amended Complaint alleging claims against University of Pittsburgh, UPMC, UPP, and Drs. Gladwin, Saba, and Berlacher, alleging claims for violations of § 1983, § 1981, Title VII, and the PHRA.  (ECF No. 152).  UPMC, UPP, and Drs. Gladwin, Saba, and Berlacher

filed an Answer to said Fourth Amended Complaint. (ECF No. 167). The University of Pittsburgh filed a Motion to Dismiss Dr. Wang's Fourth Amended Complaint. (ECF No. 165). Dr. Wang filed his Response, (ECF No. 168), and the University of Pittsburgh filed its Reply, (ECF No. 169). For the reasons stated herein, the University of Pittsburgh's Motion to Dismiss will be denied in part and granted in part.

**I.      Facts**

Dr. Wang, a cardiologist employed by UPP, also serves as a member of the faculty at the University of Pittsburgh School of Medicine. (ECF No. 152, at ¶ 5). Until sometime after July 31, 2020, Dr. Wang directed the clinical cardiac electrophysiology fellowship program, which was jointly operated by UPMC and the University of Pittsburgh School of Medicine. (ECF No. 152, at ¶¶ 5, 21-24).

The University of Pittsburgh School of Medicine is part of the University of Pittsburgh. (ECF No. 152, at ¶ 6). UPMC operates hospitals and medical centers in Pennsylvania, and it is affiliated with the University of Pittsburgh. (ECF No. 152, at ¶ 7). UPP is a group medical practice that employs physicians who work at UPMC facilities. (ECF No. 152, at ¶ 9). UPP is wholly owned by UPMC. (ECF No. 152, at ¶ 9). Some UPP physicians also serve as faculty at the University of Pittsburgh School of Medicine. (ECF No. 152, at ¶ 9).

The Fourth Amended Complaint alleges that UPMC and the University of Pittsburgh School of Medicine jointly operate residency programs for medical school graduates and fellowship programs for physicians who have completed their residencies. (ECF No. 152, at ¶ 8). The Fourth Amended Complaint further alleges that the fellowship and residency programs are part of the Graduate Medical Education program at UPMC and the University of Pittsburgh School of Medicine. (ECF No. 152, at ¶ 8).

Dr. Wang alleges that Dr. Saba is the Chief of the Cardiology Division at the University of Pittsburgh School of Medicine's Department of Medicine.  (ECF No. 152, at ¶ 10).  The Fourth Amended Complaint alleges that Dr. Saba's actions with regard to Dr. Wang's employment were taken within his role at the University of Pittsburgh School of Medicine. (ECF No. 152, at ¶ 10).

Dr. Wang alleges that Dr. Gladwin is the Chairman of the Department of Medicine at the University of Pittsburgh School of Medicine.  (ECF No. 152, at ¶ 11).  The Fourth Amended Complaint alleges that Dr. Gladwin oversees the Graduate Medical Education program that is jointly operated by UPMC and the University of Pittsburgh School of Medicine.  (ECF No. 152, at ¶ 11).  The Fourth Amended Complaint further alleges that Dr. Gladwin's actions with regard to Dr. Wang's employment were taken within his role at the University of Pittsburgh School of Medicine.  (ECF No. 152, at ¶ 11).

Dr. Wang alleges that Dr. Berlacher is a professor at the University of Pittsburgh School of Medicine's Cardiology Division.  (ECF No. 152, at ¶ 12).  The Fourth Amended Complaint alleges that, as a part of her duties in this role, she is the director of a cardiovascular fellowship training program jointly operated by UPMC and the University of Pittsburgh School of Medicine.  (ECF No. 152, at ¶ 12).  The Fourth Amended Complaint further alleges that Dr. Berlacher's actions with regard to Dr. Wang's employment were taken within her role at the University of Pittsburgh School of Medicine.  (ECF No. 152, at ¶ 12).

Dr. Wang's employment contract with UPP requires him to provide academic services to the University of Pittsburgh School of Medicine as well as physician services to UPMC.  (ECF No. 152, at ¶ 13).  Dr. Wang's contract with UPP delegates supervision of both his academic and physician services to a department head at the University of Pittsburgh School of Medicine.

4

(ECF No. 152, at ¶ 13). At all relevant times, Dr. Saba supervised Dr. Wang's work. (ECF No. 152, at ¶ 13). The UPP employment contract also provides that Dr. Wang is to be paid sums above his base salary for serving as the director of the clinical cardiac electrophysiology fellowship program. (ECF No. 152, at ¶ 45). Dr. Wang's contract with UPP also provides that Dr. Wang is to be paid above his base salary for consulting with groups needing his expertise in clinical cardiac electrophysiology at UPMC. (ECF No. 152, at ¶ 46).

In 2019 and 2020, Dr. Wang wrote an article about diversity in the cardiology workforce, wherein he traced the history of the use of race and ethnicity as factors in determining admission into medical schools, residency programs, and fellowship programs. (ECF No. 152, at ¶ 18). The article "asserted that the medical profession had not been successful in reaching its goals of increasing the percentages of underrepresented races and ethnicities in the medical profession generally, and cardiology in particular. It also noted that programs to achieve those goals applied different standards to applications by members of underrepresented races and ethnicities and raised questions about the legality, effectiveness, and wisdom of doing so." (ECF No. 152, at ¶ 18).

Dr. Wang submitted his article to the *Journal of the American Heart Association* (*JAHA*). (ECF No. 152, at ¶ 19). After the article underwent *JAHA*'s normal review process, AHA and Wiley Periodicals offered to publish Dr. Wang's article. (ECF No. 152, at ¶ 19). Under the contract, Dr. Wang was to pay AHA and Wiley Periodicals $1,600 in exchange for publishing his article in *JAHA* with open access to the public. (ECF No. 152, at ¶ 19). In March 2020, *JAHA* published Dr. Wang's article on its website. (ECF No. 152, at ¶ 19).

The Fourth Amended Complaint alleges that

> 21. Some four months later, in late July 2020, certain faculty physicians and executives employed by Defendants Pitt, UPP, and UPMC learned about the

> existence of Plaintiff's article, and objected to his conclusions—which were potentially problematic or embarrassing for UPSOM and UPMC, since these institutions were publicly committed to a policy of race discrimination in favor of "underrepresented in medicine" candidates. Defendants Pitt, UPP, and UPMC resolved and agreed to impose adverse consequences upon Plaintiff with respect to his employment at Pitt and UPP as a result of the content and ideas in his article.
>
> 22. Defendants Gladwin, Saba, and Berlacher were among those who objected to Plaintiff's conclusions and resolved and agreed as his Pitt supervisors to impose adverse employment consequences upon Plaintiff because of the views he expressed in his article. The actions described below were taken pursuant to that agreement. On July 31, 2020, defendants Saba and Berlacher, Plaintiff's Pitt supervisors, met with Plaintiff. During the course of the conversation, Plaintiff told Saba and Berlacher that the selection processes for the GME programs were violating federal law because of the racial and ethnic preferences they employed.
>
> . . . .
>
> 25. All of the Defendants discriminated and retaliated against Plaintiff because he had expressed the view that the cardiology field in general, and UPMC and UPSOM in particular, were violating anti-discrimination law by discriminating on the basis of race and ethnicity in their hiring, recruitment, promotion, and admission practices.

(ECF No. 152). Soon after this meeting, Dr. Saba removed Dr. Wang from his role as the director of the UPMC clinical cardiac electrophysiology fellowship program. (ECF No. 152, at ¶ 23). Drs. Saba and Berlacher also forbade Dr. Wang from having any contact with any UPMC fellows or residents or any University of Pittsburgh medical students. (ECF No. 152, at ¶ 23).

Dr. Wang no longer receives compensation from UPP for serving as the director of the clinical cardiac electrophysiology fellowship program. (ECF No. 152, at ¶ 45). Because Dr. Wang can no longer consult with groups that include fellows and residents, he cannot consult as frequently as he once did, and he has lost income due to his reduced consulting fees. (ECF No. 152, at ¶ 46).

6

## II. Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8

7

(3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining*, 615 F.3d at 175).

### III. Discussion

Defendant University of Pittsburgh argues that Dr. Wang's Title VII and PHRA retaliation claims must fail because he has not alleged that he engaged in a protected activity by writing a general article concerning a controversial issue. (ECF No. 166, at 8-9). Dr. Wang argues that his article served as a protected activity under Title VII and the PHRA. (ECF No. 168, at 10).

Title VII prohibits discrimination against any individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C § 2000e-2(a)(1). Title VII also prohibits an employer from discriminating against an employee who has opposed an employer's discriminatory conduct or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to an employer's discriminatory conduct. 42 U.S.C. § 2000e-3(a). To establish a prima facie case for Title VII retaliation, a plaintiff must show that (1) she engaged in conduct protected by Title VII; (2) her employer took adverse action against her; and (3) a causal link existed between her protected conduct and the employer's adverse action. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). The same framework applies to PHRA claims. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192-93 (3d Cir. 2015).

The first element of a Title VII retaliation claim requires the plaintiff to establish that he or she "oppose[d] discrimination made unlawful under [Title VII]." 42 U.S.C. § 2000e-3(a). A Title VII plaintiff who alleges retaliation must show that he opposed an "unlawful employment practice" by the defendant. *Id.*

The Fourth Amended Complaint alleges that the alleged individuals at the University of Pittsburgh, UPMC, and UPP, who took the alleged adverse employment action against Dr.

9

Wang, first learned about his article in late July 2020. (ECF No. 152, at ¶ 21). The Fourth Amended Complaint further alleges that, in late July 2020, "Defendants Pitt, UPP, and UPMC resolved and agreed to impose adverse consequences upon Plaintiff with respect to his employment at Pitt and UPP as a result of the content and ideas in his article." (ECF No. 152, at ¶ 21). The Fourth Amended Complaint then alleges that Drs. Saba and Berlacher had a meeting with Dr. Wang on July 31, 2020. (ECF No. 152, at ¶ 22). At the July 31, 2020 meeting, Dr. Wang told Drs. Saba and Berlacher about his concerns regarding the selection processes for the GME program. (ECF No. 152, at ¶ 22). The Fourth Amended Complaint alleges that, "shortly after" this meeting, that he was removed as the director the fellowship program in clinical cardiac electrophysiology and that he was forbidden from having any contact with the individuals in the GME program or University of Pittsburgh medical students. (ECF No. 152, at ¶¶ 22-23).

The University of Pittsburgh first argues that Dr. Wang's article cannot be the basis for Dr. Wang's Title VII and PHRA claims, as writing such a general article is not a protected employment activity. Dr. Wang argues that his article served as a protected activity under Title VII and the PHRA. Dr. Wang's article generally criticized the field of cardiology's use of racial and ethnic preferences for medical school admissions and residency and fellowship selections. The article did not specifically mention or criticize that the University of Pittsburgh or UPMC used such racial and ethnic preferences within their specific programs. A general complaint about an industry is not a protected employment practice under Title VII. *See Curay-Cramer v. Ursuline Acad. of Wilmington, De., Inc.*, 450 F.3d 130, 137 (3d Cir. 2006). Given the general nature of Dr. Wang's article, it cannot serve as the basis for a protected employment activity for any claims under Title VII or the PHRA against the University of Pittsburgh.

The University of Pittsburgh next argues that the Dr. Wang's Title VII and PHRA claims cannot be based upon any comments that Dr. Wang made at the July 31, 2020 meeting, because the Defendants had already decided to take adverse employment action against Dr. Wang based upon the article before said meeting.  Dr. Wang argues that this Court should read the Fourth Amended Complaint in the light most favorable to the plaintiff and find that there was not a specific moment in time alleged when the Defendants made the decision to take the alleged adverse employment actions against Dr. Wang.  Defendant's arguments address the element of causation.

Causation cannot be inferred where the decision-makers had already decided to implement the alleged adverse employment before the plaintiff engaged in a protected activity by report unlawful behavior to his employer.  *See, e.g.*, *Clark Cnty Sch. Dist. v. Breeden*, 532 268, 272 (2001) (per curiam).  Dr. Wang's Fourth Amended Complaint does not specifically allege what date the Defendants decided to take the adverse employment actions against him.  Instead, he alleges generally that they decided to take said adverse employment actions in "late July 2020."  Dr. Wang's meeting with Drs. Saba and Dr. Berlacher took place on July 31, 2020.  The pleadings within the Fourth Amended Complaint can be interpreted to mean that the Defendants decided to take the adverse employment actions against Dr. Wang after his July 31, 2020 meeting with Drs. Saba and Berlacher.  Based on the allegations within the Fourth Amended Complaint, Dr. Wang sufficiently alleges that the retaliatory actions taken against him were a result of both his *JAHA* article and his statements made at the July 31, 2020 meeting with Drs. Saba and Berlacher.  Reading the Fourth Amended Complaint in light most favorable to the plaintiff, as the Court must do at this stage, Dr. Wang has satisfied his obligation of connecting

the protected activity with the adverse employment action for the purposes of the present Motion to Dismiss.

The University of Pittsburgh's Motion to Dismiss will be denied as to Dr. Wang's proffered opinion at the July 31, 2020 meeting with Drs. Saba and Berlacher. This claim will proceed to Discovery. However, the University of Pittsburgh's Motion to Dismiss will be granted as to any statements that Dr. Wang made within his *JAHA* article. As Dr. Wang's *JAHA* article contains no discussion of the University of Pittsburgh School of Medicine or UPMC's selection policies, there are no set of facts that Dr. Wang can allege to convert his article into a protected employment activity. Thus, amendment of Dr. Wang's Title VII and PHRA retaliation claims against the University of Pittsburgh in regard to his *JAHA* article would be futile. As such, Dr. Wang will not be granted leave to amend his Title VII and PHRA claims in regard to his *JAHA* article serving as a basis for said retaliation claims.

### IV.    Conclusion

For the reasons stated above, University of Pittsburgh's Motion to Dismiss Dr. Wang's Fourth Amended Complaint will be denied in part and granted in part. The University of Pittsburgh's Motion to Dismiss will be denied as to Dr. Wang's Title VII and PHRA retaliation claims in regard to his July 31, 2020 statements made to Drs. Saba and Berlacher. The University of Pittsburgh's Motion to Dismiss will be granted as to Dr. Wang's Title VII and PHRA retaliation claims in regard to the statements made within Dr. Wang's *JAHA* article. Dr. Wang will not be granted leave to amend his Title VII and PHRA retaliation claims in regard to the statements made within his *JAHA* article. The University of Pittsburgh will be directed to file an Answer to Dr. Wang's Fourth Amended Complaint by September 5, 2023. An

appropriate Order will be entered.

DATE: <u>August 22, 2023</u>

                                                      Marilyn J. Horan
                                                      United States District Judge